IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HARRIS M. FULLER, JR.; DARIUS M.K. FULLER; LANDON K. FULLER; and MICHAEL W.K. ELI, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES WILLIAM J. AILA, JR., Chairperson; and BARRY CHEUNG, Land Agent, <br><br> Defendants. | CIV. NO. 14-00097 JMS-BMK <br><br> ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |

## ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND

## I. INTRODUCTION

The court has reviewed the "Amended Complaint" filed on May 7, 2014 by *pro se* Plaintiffs Harris M. Fuller, Jr., Darius M.K. Fuller, Landon K. Fuller, and Michael W.K. Eli (collectively, "Plaintiffs"). The court refers to it as the "Second Amended Complaint" because Plaintiffs filed a prior Amended Complaint on April 3, 2014. The court DISMISSES the Second Amended Complaint, but gives Plaintiffs another chance to file a proper Complaint.

Plaintiffs might have misunderstood the court's Order of April 15, 2014. That Order dismissed the April 3, 2014 Amended Complaint, and allowed Plaintiffs to file a Second Amended Complaint. Because of Plaintiffs' possible confusion, the present Order notifies Plaintiffs of the deficiencies in the Second Amended Complaint, and again explains to Plaintiffs what they must do if they want this case to continue. If Plaintiffs do not file a proper Third Amended Complaint by **June 27, 2014**, the court will dismiss the action and close the case file.

The Second Amended Complaint is missing the details of the previously-alleged October 2013 incidents in which Defendant Department of Land and Natural Resources ("DLNR") Chairperson, William J. Aila, Jr. ("Aila"); DLNR Land Agent, Barry Cheung ("Cheung") (collectively, "Defendants"); and/or others were claimed to have removed Plaintiffs' property, detained them without permission or a warrant, and then arrested and evicted them. These kinds of details were alleged in the April 3, 2014 Amended Complaint (and in the original Complaint of February 27, 2014), but Plaintiffs did not re-allege them in the Second Amended Complaint. Instead, the Second Amended Complaint appears to have responded to the court's April 15, 2014 Order by focusing solely on providing evidence that Aila and/or Cheung had personal involvement.

A single Complaint that combines some of the factual allegations made in all versions of the Complaint (dated February 27, 2014, April 3, 2014, and May 7, 2014) might properly allege a violation of the Fourth Amendment -- made applicable to the states by the Fourteenth Amendment -- of the U.S. Constitution under 42 U.S.C. § 1983 against Aila and/or Cheung. The court, however, is not authorized on its own to combine different versions of a Complaint into a single Complaint. Thus, the court cannot properly analyze whether the action should be allowed to proceed further. Plaintiffs must file a *single* Complaint that includes *all* of their factual allegations.

The court explains its ruling in detail below.

## II. BACKGROUND

**A.    The Original Complaint**

On February 27, 2014, Plaintiffs filed their original Complaint[1] against the DLNR itself, and Aila and Cheung (in both their individual and official capacities), which the court construed as asserting claims pursuant to (1) 42 U.S.C. § 1983 for violation of Plaintiffs' Fourth Amendment rights, based on allegations of illegal search, seizure, and detention; (2) 42 U.S.C. § 1986, for failure to prevent

---

[1] Along with the Complaint, each Plaintiff filed an Application to Proceed Without Prepaying Fees or Costs ("Application"). Doc. Nos. 3 to 6. On March 13, 2014, the court granted each Application. Doc. No. 7, at 3.

a conspiracy under 42 U.S.C. § 1985 to deprive Plaintiffs of equal protection of the laws; and (3) state law for negligence and emotional distress. Doc. No. 1, Compl. Among other contentions, the Complaint alleged that DLNR officers went to Plaintiffs' "family land," and, "without permission and or warrant illegally searched, seized and detained [Plaintiffs] at Kapolei Police booking Station parking lot," only to give them a citation, and "sa[y] they were sorry and let [Plaintiffs] go." *Id.* ¶¶ 5, 6. The Complaint further alleged that while Plaintiffs were detained, "DLNR officers and Land agents confiscated most of [Plaintiffs'] belongings, work tools, livestock, personal things and sentimental property." *Id.* ¶ 6. Two days later, "DLNR officers and Land agents" returned "to evict or arrest" Plaintiffs and "confiscated whatever was left still of value." *Id.* ¶ 7.

On March 13, 2014, the court dismissed the original Complaint (1) *with* prejudice as to the claims for money damages against the DLNR as a state agency (and against Aila and Cheung in their official capacities), based on Eleventh Amendment immunity; but (2) *without* prejudice, and with leave to amend the § 1986 and/or § 1985(3) claims. Doc. No. 7. The court did not otherwise dismiss a claim under § 1983 for a violation of the Fourth Amendment, but the court explained that an amended complaint "supersedes all previously-filed complaints," and therefore, "if Plaintiffs choose to file an Amended Complaint,

they must also re-allege their § 1983 and state law claims against Defendants in their individual capacities . . . along with the amended § 1986 claim." *Id.* at 12-13.

**B.    The Amended Complaint**

Plaintiffs filed an Amended Complaint on April 3, 2014.  Doc. No. 9. Among other assertions (similar to the original Complaint), the Amended Complaint alleged that "[o]n October 22, 2013, [Cheung] and [DLNR] officers went to our family land . . . [and] posted up notices to vacate property by October 28, 2013." *Id.* at 3.  It alleged that Aila "left a message stating that he couldn't and didn't recognize [Plaintiff Harris M. Fuller's] documents." *Id.*  It claimed that "[o]n October 29, 2013 [DLNR] officers and land agents went to the land without permissions[,] and or issue of a warrant[,] illegally searched and seized and detained [Plaintiffs]." *Id.*   It continued:

> While we were detained [DLNR] officers and Land agents confiscated most of our belongings, work tools, livestock, personal things and sentimental properties.  There was/is no inventory or receipt of belongings given by defendants for property taken. . . .
> Two days later . . . officers and land agents returned to evict or arrest, gave us fifteen minutes to vacate property and confiscated anything of value that remained on the property.

*Id.* at 4.

On April 15, 2014, the court dismissed the Amended Complaint, without prejudice to Plaintiffs filing a new Complaint that clarified the alleged personal involvement of Aila and/or Cheung.  *See* Doc. No. 10, Order Dismissing Amended Complaint.  As to a § 1983 claim, the April 15, 2014 Order told Plaintiffs, among other things, that "[a]lthough the Amended Complaint alleges that DLNR land agents and officers illegally detained Plaintiffs and searched and seized Plaintiffs' property, Plaintiffs do not allege any personal involvement in those specific activities by either Aila or Cheung."  *Id*. at 8.  The Order concluded "[t]hus, the Amended Complaint fails to state a cognizable § 1983 claim that Aila and Cheung violated Plaintiffs' rights under the Fourth Amendment."  *Id.*

The April 15, 2014 Order also dismissed claims under §§ 1985 & 1986, concluding that "the Amended Complaint does not allege facts showing a conspiracy between Cheung and Aila, or specific acts done by Cheung and Aila in furtherance of such conspiracy."  *Id.* at 11.  The court allowed leave to amend, explaining that

> [a] Second Amended Complaint will supercede the prior pleadings and must be complete in itself without reference to prior . . . superceded pleadings.  Thus, if Plaintiffs choose to file a Second Amended Complaint, they must also re-allege their state law claims against Defendants in their individual capacities (sufficient to comply with Rules 8 and 12(b)(6)) along with the amended federal law claims.

*Id.* (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by*

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc)).  The court also

indicated it would decline supplemental jurisdiction over state law claims for

negligence or emotional distress if Plaintiffs failed to file a Second Amended

Complaint.  *Id.* at 12.

**C.  The Second Amended Complaint**

Plaintiffs filed their "[Second] Amended Complaint for Personal

Injury and Property Damages" on May 7, 2014, Doc. No. 12-4, which the court is

reviewing in the present Order.  In responding to the April 15, 2014 Order,

Plaintiffs appear to be attempting to provide proof that Aila and/or Cheung had

some personal involvement in the events described in the Amended Complaint

(they filed a picture and two affidavits of witnesses as exhibits, and referenced

some of the witness statements in their allegations).  *See* Doc. Nos. 12-1, 12-2, 12-

3.  Plaintiffs did not, however, re-allege or describe the October 2013 events as

they did in their prior Complaints.

Specifically, the Second Amended Complaint alleges that, on the

morning of October 29, 2013, "DLNR officers and land agents and Barry Cheung

. . . went to [Plaintiffs'] families [sic] land/residence allegedly to evict and arrest."

Doc. No. 12-4, Second Am. Compl. at 3.  It attaches an affidavit from witness Dale

DeTroye, who states that "DLNR Enforcement officers handcuff[ed] and remove[d Plaintiffs] from Waianae Valley Ranch." Doc. No. 12-3, Pls.' Ex. 9, DeTroye Aff. It further alleges that a DLNR officer told Kaipo Kamanu-Kauanui, a witness who was video-recording this event, "to turn off the camera and leave because this is a government operation or he would be arrested too." Doc. No. 12-4, Second Am. Compl. at 3. Kamanu-Kauanui "watched [Aila and Cheung] walking and looking around on the plaintiffs [sic] land and giving orders to the DLNR officers and land agents to remove belongings and properties of plaintiffs." *Id.* at 3-4. Kamanu-Kauanui states that "I seen the officers arrest [Plaintiffs], after they was gone the land agents along with [Aila and Cheung] confescate [sic] alot [sic] of there [sic] belongings and tools." Doc. No. 12-2, Pls.' Ex. 8, Kamanu-Kauanui Aff. Similarly, DeTroye states that "[s]tate workers . . . removed . . . a generator, welder and other small tools. State workers returned the following week . . . and cleared the area of all other belongings and demolished 2 old ranch houses." Doc. No. 12-3, Pls.' Ex. 9, DeTroye Aff.

The Second Amended Complaint invokes "provisions of title 42 U.S.C.S. 1983, Title 42 U.S.C.S. 1986, Title 42 USCS 1985 [and] Title 28 U.S.C.S 452." Doc. No. 12-4, Second Am. Compl. at 2. It further alleges that Plaintiffs are "pursuing to sue the defendants in their individual capacity[.]" *Id.* Finally, it

alleges that because of Defendants' negligence, Plaintiffs sustained serious emotional distress. *Id.* at 4. They seek compensatory damages. *Id.*

## III. **STANDARD OF REVIEW**

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening, and order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an *in forma pauperis* complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

Plaintiffs are appearing *pro se*; consequently, the court liberally construes the Complaint. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior

to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The court should not, however, advise a litigant how to cure defects. This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

The court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (construing pro se litigant's complaint liberally does not relieve court of duty to determine whether the litigant presented factual allegations sufficient to state a plausible claim for relief); *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 679.

A complaint must also meet the requirements of Federal Rule of Civil Procedure 8, mandating that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation signals omitted).

## IV. DISCUSSION

Construed liberally in favor of Plaintiffs, the Second Amended Complaint seeks relief against Aila and Cheung in their individual capacities pursuant to 42 U.S.C. §§ 1983, 1985 & 1986, along with state law claims for

negligence and emotional distress.[2]  Doc. No. 12-4, Second Am. Compl. at 2-4.

The court, however, finds that (standing alone) the Second Amended Complaint

fails to allege facts setting forth plausible claims for relief.

## A.    42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983 against state officials in their

individual capacities, "a plaintiff must allege two essential elements:  (1) that a

right secured by the Constitution or laws of the United States was violated; and

(2) that the alleged deprivation was committed by a person acting under color of

state law."  *Kehano v. Pioneer Mill Co.*, 2012 WL 6094801, at *2 (D. Haw. Dec. 6,

2012) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also OSU Student*

*Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) ("To state a claim under

§ 1983 against state officials in their individual capacities, a plaintiff must plead

that the officials, acting under color of state law, caused the deprivation of a federal

right.") (citation and quotation marks omitted).

---

[2]  The Second Amended Complaint also appears to assert jurisdiction and/or claims pursuant to 28 U.S.C. § 452 and 18 U.S.C. § 242.  Doc. No. 12-4, Second Am. Compl. at 2-3. Neither provision, however, provides jurisdiction or a private cause of action.  Rather, § 452 merely provides that the federal courts "shall be deemed always open for the purpose of filing proper papers," and other housekeeping matters.  28 U.S.C. § 452.  And 18 U.S.C. § 242 is a federal criminal statute that does not confer a private right of action.  *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of claim because 18 U.S.C. § 242 is a "criminal statute[] that do[es] not give rise to civil liability").

Government officials may not be held liable for the unconstitutional

conduct of their subordinates under a theory of respondeat superior. *Iqbal*, 566

U.S. at 676. Rather, "each government official, his or her title notwithstanding, is

only liable for his or her own misconduct." *OSU Student Alliance*, 699 F.3d at

1069 (quoting *Iqbal*, 556 U.S. at 677). Thus, to state a valid § 1983 constitutional

claim, "a plaintiff must [allege] that each government-official defendant, through

the official's own individual actions [has] violated the Constitution." *Id.*

The Second Amended Complaint (standing alone) fails to identify a

specific "right secured by the Constitution or laws of the United States" that

Defendants allegedly violated. Rather, it appears that, in filing their Second

Amended Complaint, Plaintiffs focused on Aila's and/or Cheung's individual

actions and whether they were "under color of law."

The court recognizes that, as set forth above, the April 3, 2014

Amended Complaint alleged that DLNR agents and officers "without

permissions[,] and or issue of a warrant," illegally detained Plaintiffs and searched

and seized Plaintiffs "belongings, work tools, livestock, personal things and

sentimental properties" without an "inventory or receipt of belongings." Doc. No.

9, Am. Compl. at 4. And similar allegations were made in the original Complaint.

Such types of allegations, assumed as true and construed in the light most

favorable to the Plaintiffs, *see Manzarek v. St. Paul Fire & Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), appear to state a violation of the Fourth Amendment.

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Thus, unless an exception applies, the Fourth Amendment proscribes warrantless "entr[y] onto private land to search for and abate suspected nuisances." *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990) (citations omitted) (addressing a tenant's improper commercial use of property). That is, subject to a few specific exceptions, "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in . . . property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992) (citation omitted). "Deciding whether officers' actions were reasonable requires . . . balanc[ing] 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *United States v. Ankeny*, 502 F.3d 829, 836 (9th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Applying those principles, the prior Complaints alleged specific circumstances describing a warrantless entry onto private land, a seizure of personal property without permission (and without "inventory or receipt"), and an illegal eviction -- that is, they indicate a plausible Fourth Amendment violation.[3] But Plaintiffs failed to re-allege these types of facts in the Second Amended Complaint.

As it stands, the Second Amended Complaint's allegations that "DLNR officers and land agents and . . . Cheung" went to Plaintiffs' family's "land/residence . . . to evict and arrest," "removed Plaintiffs' belongings from the property," and Aila and Cheung "confescate [sic] a lot of there [sic] belongings," are insufficient by themselves to state a Fourth Amendment claim. Doc. Nos. 12-4, Second Am. Compl. at 3-4;12-2, Pls.' Ex. 8; & 12-3, Pls.' Ex 9. *See Iqbal*, 556 U.S. at 678 (explaining that "elements of a cause of action, supported by mere conclusory statements," and "naked assertions devoid of further factual enhancement" "do not suffice" to state a plausible claim for relief). And without

_____

[3] Whether there are "countervailing governmental interests" justifying "the nature and quality of the intrusion on the [Plaintiffs'] Fourth Amendment interests," *Ankeny*, 502 F.3d at 836, would be another matter, not proper for resolution at a screening stage of this particular *pro se* action. *See, e.g.*, *Hydrick v. Hunter*, 500 F.3d 978, 993 (9th Cir. 2007) ("It is impossible to make such a fact-specific determination [as to reasonableness] when the precise circumstances of the searches or seizures are not before the court and when the Defendants have not yet had a chance to justify the alleged searches or seizures."), *judgment vacated on other grounds*, 556 U.S. 1256 (2009).

specific factual allegations regarding the circumstances of a Fourth Amendment claim, the court cannot determine whether Plaintiffs have sufficiently alleged personal involvement of Aila and/or Cheung.

In short, the Second Amended Complaint fails to state a cognizable § 1983 claim.

**B.    42 U.S.C. §§ 1985 and 1986 Claims Against Defendants in Their Individual Capacities**

The Second Amended Complaint also fails to state plausible claims for violations of §§ 1985 and 1986.  To state a plausible § 1986 claim for failure to prevent a § 1985 conspiracy, a plaintiff must first assert a valid § 1985 claim.  *See Huling v. City of Los Banos*, 869 F. Supp. 2d 1139, 1144 (E.D. Cal. 2012) (citing *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988)).  As explained previously, in order to state a valid claim under § 1985(3),[4] "Plaintiffs must allege (1) a conspiracy; (2) to deprive the plaintiff of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and a (4) resulting injury."  Doc. No. 7, Mar. 13, 2014 Order at 10 (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)); Doc. No. 10, Apr. 15, 2014 Order at 9.

---

[4] Subsections (1) and (2) of § 1983 are not applicable to any facts alleged in this case.

To establish a conspiracy, Plaintiffs must allege facts that show "an agreement or meeting of the minds to violate Constitutional rights . . . and each party must at least share the common objective of the conspiracy." *Bechdolt v. Loveland*, 2011 WL 6020666, at *5 (D. Or. Nov. 30, 2011) (citing *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (internal quotation and citation omitted)). However, "[a] conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement." *Ward v. Equal Emp't Opportunity Comm'n*, 719 F.2d 311, 314 (9th Cir. 1983). "And the second element of a § 1985(3) claim requires an allegation that Defendants' actions were 'motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Doc. No. 7, Mar. 13, 2014 Order at 10 (citing *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002)).

The Second Amended Complaint fails to allege any facts that could possibly support claims against Cheung and Aila under §§ 1985 or 1986. At best, it alleges that Plaintiffs consider themselves to be "Kanaka Mauoli [sic] National[s]," Doc. No. 12, Second Am. Compl. at 2, and that police officers "came to assist DLNR wit [sic] transporting the plaintiffs." *Id.* at 3. But it alleges no facts showing a conspiracy between Cheung and Aila, either through any

"agreement or meeting of the minds," *Bechdolt*, 2011 WL 6020666, at *5, or based on Cheung's and Aila's conduct. *See Ward*, 719 F.2d at 314 ("A conspiracy can be inferred from conduct."). Nor do Plaintiffs allege specific acts done by Cheung and Aila in furtherance of such conspiracy. Furthermore, the Second Amended Complaint fails to allege that Cheung and Aila deprived Plaintiffs of equal protection of the laws, or that if they had, such deprivation was based on Plaintiffs' identification as "Kanaka Maoli" nationals. *See RK Ventures, Inc.*, 307 F.3d at 1056 (explaining that a § 1985(3) claim requires an allegation that Defendants' actions were "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus"). It thus fails to state plausible claims pursuant to §§ 1985 and/or 1986.

Moreover -- unlike possible claims for violations of the Fourth Amendment under § 1983 -- neither of the prior versions of the Complaint alleged any facts that could be construed to state claims for violations of §§ 1985 and/or 1986. Plaintiffs have had three chances to state such conspiracy claims, but have failed to do so. Accordingly, the claims for violations of §§ 1985 and/or 1986 are DISMISSED with prejudice.

## C.    Leave to Amend

Plaintiffs have been granted two prior opportunities to revise their initial claims in compliance with Rules 8 and 12(b)(6), and to cure the deficiencies of their prior pleadings.  Nevertheless, because Plaintiffs are proceeding *pro se* and because (as described in detail above) some of the current deficiencies might be cured by inclusion of allegations from prior Complaints, the court will afford them one final opportunity to file an amended Complaint.  *See Lucas*, 66 F.3d at 248 ("Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

Accordingly, Plaintiffs are granted leave to file a Third Amended Complaint that attempts to state a cognizable claim under § 1983 for a violation or violations of the Fourth Amendment against Aila and/or Cheung.  They may not, however, attempt to re-plead violation of §§ 1985 or 1986.

An amended complaint will supersede the prior pleadings and -- as the court has stated in prior Orders -- *must be complete in itself without reference to prior superseded pleadings.*[5]  *E.g.*, *King*, 814 F.2d at 567.  Should Plaintiffs choose

---

[5] It is conceivable that Plaintiffs misunderstood the requirement that they not make "reference to prior superceded pleadings" as meaning they could not repeat prior allegations.  To be clear, what this means is that they may not simply point to other documents in the record --

(continued...)

to file a Third Amended Complaint, they must write short, plain statements telling the court: (1) the treaty, constitutional right, or statutory right they believe was violated; (2) the specific basis of this court's jurisdiction; (3) the name of the defendant who violated that right; (4) exactly what that defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiffs' rights; and (6) what specific injury Plaintiffs suffered because of that defendant's conduct. If Plaintiffs fail to affirmatively link the conduct of each named defendant with the specific injury they suffered, the allegation against that defendant will be dismissed for failure to state a claim.

Plaintiffs must clearly designate on the face of the document that it is the "Third Amended Complaint." Again, the Third Amended Complaint may not incorporate any part of the original Complaint, Amended Complaint, or Second Amended Complaint by reference, but rather, any specific allegations must be retyped or rewritten in their entirety. Plaintiffs may include only one claim per count. Any cause of action not already dismissed with prejudice that is not raised in the amended complaint is waived.[6] *King*, 814 F.2d at 567. Failure to file a

---

[5](...continued)
they must put all their allegations in a single Complaint.

[6] Claims that were dismissed *without* leave to amend need not be pleaded again in an amended complaint to preserve them for appeal. *See Lacey*, 693 F.3d at 928. However, "claims

(continued...)

Third Amended Complaint by **June 27, 2014** will result in automatic dismissal of this action.

**D.   Supplemental Jurisdiction over Negligence and Emotional Distress Claims**

A federal court has subject matter jurisdiction under diversity of citizenship (28 U.S.C. § 1332) or through "federal question jurisdiction" (28 U.S.C. § 1331). *Peralta v. Hispanic Bus., Inc*., 419 F.3d 1064, 1068 (9th Cir. 2005). If it has federal jurisdiction, the court may exercise supplemental jurisdiction over state law claims such as a claim for negligence or infliction of emotional distress. But, under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" Here, there is no basis in the Second Amended Complaint for diversity jurisdiction. Thus, because the dismissed §§ 1983, 1985 and 1986 claims provide the only other basis for federal jurisdiction, the court does not address Plaintiffs' state law claims.

If Plaintiffs do not file a Third Amended Complaint, the court will decline jurisdiction over the state law claims pursuant to § 1367(c) and dismiss them without prejudice. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S.

_____

[6](...continued)
that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived." *Id.*

156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc*., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

If Plaintiffs choose to file a Third Amended Complaint that states a cognizable federal claim against Defendants, however, the court will retain jurisdiction over related state law claims included in the Third Amended Complaint and address them if challenged at that time.

///

///

///

///

///

///

# V.  <u>CONCLUSION</u>

For the reasons discussed above, the court DISMISSES the Second Amended Complaint, with leave to amend the § 1983 claims.  Plaintiffs are allowed until **June 27, 2014** to file a Third Amended Complaint.  Otherwise, this action will be dismissed, and the case file will be closed.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 6, 2014.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Fuller, et al. v. Haw. Dep't of Land & Natural Res. William J. Aila, Jr., Chairperson, et al.*, Civ. No. 14-00097 JMS-BMK, Order Dismissing Second Amended Complaint With Leave to Amend