IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HARRIS M. FULLER, JR.; DARIUS M.K. FULLER; LANDON K. FULLER; and MICHAEL W.K. ELI, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES WILLIAM J. AILA, JR., Chairperson; and BARRY CHEUNG, Land Agent, <br><br> Defendants. | CIV. NO. 14-00097 JMS-BMK <br><br> ORDER (1) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, DOC. NO. 30, ON PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS; AND (2) DECLINING JURISDICTION OVER REMAINING STATE LAW CLAIMS |

**ORDER (1) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, DOC. NO. 30, ON PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS; AND (2) DECLINING JURISDICTION OVER REMAINING STATE LAW CLAIMS**

## I. INTRODUCTION

Plaintiffs Harris M. Fuller, Jr., Darius M.K. Fuller, Landon K. Fuller, and Michael W.K. Eli (collectively, "Plaintiffs") allege that Defendants Department of Land and Natural Resources ("DLNR") Chairperson, William J. Aila, Jr. ("Aila"), and DLNR Land Agent Barry Cheung ("Cheung") (collectively, "Defendants") violated Plaintiffs' constitutional rights when the DLNR evicted

Plaintiffs from their property located at WaianaeKai, Waianae, Oahu, identified as Parcel 04 of Tax Map Key:(1) 8-5-06 (the "subject property"), seized their personal belongings, and detained, arrested, and cited Plaintiffs. Construed liberally, these allegations appear to assert claims for violations of both the Fourth Amendment (through the Fourteenth Amendment) and the due process clause of the Fourteenth Amendment, as well as state law claims.

Currently before the court is Defendants' Motion for Summary Judgment, Doc. No. 30,[1] arguing that this action should be dismissed because, among other reasons, the subject property is State land, meaning that Plaintiffs were trespassing and there was no Fourth Amendment or due process violation. Based on the following, the court GRANTS Defendants' Motion as to the constitutional claims, and declines jurisdiction over any remaining state law claims.

///

///

///

---

[1] Defendants styled their Motion as seeking either judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or summary judgment pursuant to Rule 56. Because both parties presented evidence, the court construes the arguments as directed to summary judgment. Plaintiffs have adequate notice of summary judgment -- Defendants' Motion seeks summary judgment in the alternative, the court gave Plaintiffs notice of their obligations in responding to such motion, Doc. No. 32, and Plaintiffs submitted evidence with their Opposition.

## II. BACKGROUND

**A. Factual Background**

The basis of Plaintiffs' claims is that they were wrongfully evicted and arrested for trespassing on their own property, and that their personal belongings were searched, seized, and/or destroyed on October 29, 2013. *See generally* Doc. No. 16, TAC. Plaintiffs assert claims for violation of their Fourth Amendment (through the Fourteenth Amendment) and due process rights, and state law claims for negligence and emotional distress.

Defendants do not dispute the basic facts of Plaintiffs' eviction from the subject property, arrest, and seizure of Plaintiffs' personal belongings. Indeed, Plaintiffs were warned on October 22, 2013 via a "Notice to Vacate" posted on the property that they were trespassing and that they would be evicted and subject to arrest if they did not vacate by October 28, 2013. Specifically, the Notice to Vacate provides that "the subject land area at WaianaeKai, Waianae, Oahu, identified as Parcel 04 of Tax Map Key:(1) 8-5-06, is owned by the State of Hawaii," and that "NOTICE TO VACATE IS HEREBY given to all persons occupying, camping and/or residing on subject lands without the written approval of the Board of Land and Natural Resources, State of Hawaii, that you must vacate subject lands immediately and remove all structures, vehicles and personal

3

belongings placed thereon." Doc. No. 30-2, Defs.' Ex. 1. The Notice further provides:

> ANY AND ALL PERSONS FOUND OCCUPYING, CAMPING AND/OR RESIDING UPON SUBJECT LANDS AFTER OCT 28 2013, SHALL BE SUBJECT TO ARREST AND PROSECUTION FOR TRESPASSING, AND ALSO SHALL BE SUBJECT TO A FINE OF UP TO $1,000 PER DAY, PLUS ADMINISTRATIVE COSTS AND DAMAGES FOR VIOLATIONS OF THE PROVISIONS OF SECTION 171-6, HRS.
> FURTHER, ANY AND ALL VEHICLES, BICYCLES, BOATS, STACKS OF LUMBER, STRUCTURES, AND PERSONAL BELONGINGS PLACED, MAINTAINED AND/OR FOUND ON SUBJECT LANDS AFTER SAID TIME AND DATE SHALL BE CONSIDERED ABANDONED AND SHALL BE SOLD, DONATED OR OTHERWISE DISPOSED OF BY THE STATE OF HAWAII AT THE FORMER OWNER'S COST AND EXPENSE IN ACCORDANCES WITH SECTION 171-31.5, HRS.

*Id.*

So, the issue in dispute is straightforward -- who owns the subject property? Defendants assert that the subject property is owned by the State of Hawaii, and have presented evidence establishing that (1) in 1990, the subject property (along with several other contiguous parcels) was public land and set aside for agricultural park purposes under control of the Department of Agriculture, State of Hawaii, via Executive Order 3481, *see* Doc. No. 30-3, Defs.'

Ex. B; (2) effective September 26, 2011, the State canceled a lease on the subject property that was previously awarded to Waianae Valley Ranch, Inc. and assigned to Waianae Valley Ranch LLC, Doc. No. 30-4, Defs.' Ex. C; and (3) on March 2, 2013, the State withdrew the subject property from Executive Order No. 3481, returning the subject property to the DLNR. Doc. Nos. 30-3, 30-5, Defs.' Exs. B, D.

In comparison, Plaintiffs present birth certificates to support that they are "heirs and successors to all crown Lands" of the Kingdom of Hawaii, *see* Doc. No. 34, Pls.' Opp'n at 2-3; Doc. Nos. 34-2, 34-3, Pl.'s Ex. 2, 3, and attach other documents to assert that the sovereignty of the Kingdom of Hawaii was never relinquished such that the subject property belongs to Plaintiffs as descendants of Hawaiian royalty. *See generally* Doc. Nos. 34-1 - 34-19, Pls.' Exs. 1-19.

**B.     Procedural History**

Plaintiffs filed their Complaint on February 27, 2014, and after two screening orders, Plaintiffs filed their TAC on June 23, 2014. Doc. No. 16.

Defendants filed their Motion for Summary Judgment on October 31, 2014, Doc. No. 30, and Plaintiffs filed an Opposition on November 17, 2014. Doc. No. 34. Defendants did not file a Reply.

On December 5, 2014, the court issued an entering order

(1) explaining that Plaintiffs' TAC, construed liberally, appeared to assert a violation of the due process clause of the Fourteenth Amendment, and (2) directing the parties to file supplemental briefing. Doc. No. 35. Defendants submitted their supplemental brief on December 16, 2014, Doc. No. 36, and Plaintiffs did not respond. Pursuant to Local Rule 7.2(d), the court determines the Motion without a hearing.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. **DISCUSSION**

Defendants argue, among other things, that summary judgment should be granted on Plaintiffs' federal constitutional claims, and that the court should decline jurisdiction over any remaining state law claims.[2] The court addresses these arguments in turn.

**A.    Fourth Amendment**

The basis of Plaintiffs' Fourth Amendment claim is that Defendants illegally came onto the subject property, evicted and/or arrested Plaintiffs, and seized Plaintiffs' personal property. Defendants argue that this claim fails because the subject property is State land such that Plaintiffs were trespassing and Defendants acted reasonably in arresting Plaintiffs and seizing their personal property. Based on the following, the court agrees.

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), explains:

---

[2] Defendants also argue that the TAC does not include sufficient allegations regarding Aila and Cheung to establish that they (as opposed to unnamed DNLR agents) violated Plaintiffs' constitutional rights. *See* Doc. No. 30, Defs.' Mot. at 8-9. Because the court finds that Plaintiffs have failed to establish a genuine issue of material fact in support of any of their federal claims, the court need not address this argument.

> The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."

*Id.* at 1027 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Regardless of whether a privacy interest or possessory interest is at stake, the relevant inquiry under the Fourth Amendment is one of reasonableness -- "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *See Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted). Whether a seizure is unreasonable under the Fourth Amendment depends upon the facts and circumstances of the seizure. *See Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).

Reasonableness often turns on whether the search and/or seizure occurs on private property (where individuals have a heightened privacy interest) as opposed to public property (where individuals may still have a possessory interest in their belongings). For example, absent an exception, the Fourth Amendment generally proscribes warrantless "entr[y] onto *private land* to search for and abate suspected nuisances." *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990) (citations omitted) (emphasis added). In comparison, "[a]

9

warrantless arrest on *public property* supported by probable cause does not violate the Fourth Amendment." *Franklins v. Maricopa Cnty. Med. Ctr.*, 978 F.2d 714 (9th Cir. 1992) (citing *United States v. Johnson,* 626 F.2d 753, 755-56 (9th Cir. 1980), *aff'd on other grounds*, 457 U.S. 537 (1982)) (emphasis added). And although "[t]he Fourth Amendment protects against unreasonable interferences in [personal] property" that is on public property, a seizure may nonetheless be reasonable where the owner is given an opportunity to retrieve the property. *See Lavan*, 693 F.3d at 1028-29, 1030-31 (determining that a municipality seizes a homeless person's property unreasonably if it destroys the property before giving its owner a meaningful opportunity to retrieve it).

Turning to the facts of this case, Defendants have carried their burden of establishing that the events at issue in this action occurred on State land. Defendants have presented evidence establishing that the subject property (1) was public land in 1990, and set aside for agricultural park purposes under control of the Department of Agriculture, State of Hawaii, via Executive Order 3481, *see* Doc. No. 30-3, Defs.' Ex. B; (2) effective September 26, 2011, the State canceled a lease on the subject property that was previously awarded to Waianae Valley Ranch, Inc. and assigned to Waianae Valley Ranch LLC, Doc. No. 30-4, Defs.' Ex. C; and (3) on March 2, 2013, the State withdrew the subject property

from Executive Order No. 3481. Doc. No. 30-5, Defs.' Ex. D. Thus, as of March 2, 2013, the subject property was State land, under the DLNR. The burden is therefore on Plaintiffs to present evidence that they have an ownership interest in the subject property. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

In opposition, Plaintiffs do not present any documents recorded with the State establishing any interest in the subject property. Instead, Plaintiffs present various exhibits to argue that they have an interest in the subject property as descendants of Hawaiian royalty (who originally held the property), and that the annexation of Hawaii to the United States is invalid. This argument fails for two reasons. First, Plaintiffs' documents outlining their birth records and the history of Hawaii do not establish an interest in the subject property -- the Kingdom of Hawaii is not a legally recognized entity in the State of Hawaii and does not provide a basis for Plaintiffs' land ownership. Second, to the extent Plaintiffs ask this court to determine that they own the subject property on the basis that Hawaii is not a valid state of the United States, such issue is a nonjusticiable political question over which the court does not have subject matter jurisdiction. In particular, *Yellen v. United States*, 2014 WL 2532460 (D. Haw. June 5, 2014), explains, "'it rests with Congress,' not the judiciary, to decide the governance of Hawaii," and "issues of sovereignty and/or recognition of foreign entities are not

for the judiciary to determine." *Id.* at *2. Plaintiffs have therefore failed to establish a genuine issue of material fact that they (and not the State of Hawaii) own the subject property.

In light of the State's ownership of this land, the court further finds no genuine issue of material fact that Defendants' actions of entering the property, seizing Plaintiffs' personal property, and arresting Plaintiffs were reasonable. Plaintiffs were trespassing on State land, and it is well-settled that "a person who unlawfully takes up temporary residence on public property without a permit or permission lacks an objectively reasonable expectation of privacy." *Lavan*, 693 F.3d at 1036; *see also id.* ("[A] trespasser on private state property [does] not have an objectively reasonable expectation of privacy." (citing *Zimmerman v. Bishop Estate*, 25 F.3d 784, 787-88 (9th Cir. 1994))).

Thus, DLNR agents did not violate any Fourth Amendment right of Plaintiffs by entering the subject property without a warrant. *See Conner*, 897 F.2d at 1490. Nor were Plaintiffs' Fourth Amendment rights violated when they were arrested for trespassing -- Plaintiffs were informed that the subject property was State land and that they would be cited for trespassing if they remained on the property, which is exactly what happened. Finally, Defendants' seizure of Plaintiffs' personal property was reasonable as a matter of law under the

circumstances -- although Plaintiffs had no reasonable expectation of privacy, any possessory interest was not violated where the October 22, 2013 Notice to Vacate gave Plaintiffs notice that they must remove their personal property and that any remaining personal property "SHALL BE CONSIDERED ABANDONED AND SHALL BE SOLD, DONATED OR OTHERWISE DISPOSED OF BY THE STATE OF HAWAII AT THE FORMER OWNER'S COST AND EXPENSE IN ACCORDANCES WITH SECTION 171-31.5, HRS." Doc. No. 30-2, Defs.' Ex. 1. Where Defendants gave Plaintiffs ample notice to remove their property, there was no unreasonable interference with Plaintiffs' possessory interests.

The court therefore GRANTS Defendants' Motion as to Plaintiffs' Fourth Amendment claim.

**B.    Due Process**

Although not clear, Plaintiffs may be asserting a due process claim based on the assertion that Defendants seized and/or destroyed Plaintiffs' personal property without providing "any receipt or inventory of their belongings that were taken." Doc. No. 16, TAC at 4. Defendants argue, and the court agrees, that such claim fails.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*,

424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether a due process violation has occurred, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry [ ] examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Determination of what process is due is a fact-specific inquiry requiring consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Applying these factors, the court finds no genuine issue of material fact that Plaintiffs were afforded sufficient process for their personal property seized on State land. Although Plaintiffs had a possessory interest in their personal property, Plaintiffs had no right to store it on State land, and Defendants gave them notice it would be seized if not removed. In particular, the Notice to

Vacate was posted seven days prior to the removal of Plaintiffs' items, and specifically advised Plaintiffs that they were trespassing on State land and that any personal items remaining on the property after October 28, 2013 "SHALL BE CONSIDERED ABANDONED AND SHALL BE SOLD, DONATED OR OTHERWISE DISPOSED OF BY THE STATE OF HAWAII AT THE FORMER OWNER'S COST AND EXPENSE IN ACCORDANCES WITH SECTION 171-31.5, HRS." Doc. No. 30-2, Defs.' Ex. 1.[3] As a result, the risk of an erroneous deprivation of property was minimal, and additional procedural safeguards would have added nothing.

Further, the State has a substantial interest in protecting its land from Plaintiffs' unlawful possession and interference, *see* HRS § 171-7(2), (3) (directing the DLNR to "[p]revent . . . unlawful occupation of, or trespassing on public lands," and to evict "trespassers . . . and their effects"), and in enforcing existing State law. *See Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir. 1982) (identifying the city's interest in enforcing its traffic laws); *Conachen v.*

---

[3] Plaintiffs do not assert (much less present evidence) that Defendants did not comply with HRS § 171-31.5, governing the "disposition of abandoned or seized property." As a result, Plaintiffs' due process claim (to the extent they assert one) appears directed to Defendants' seizure of Plaintiffs' items, as opposed to the procedures available to Plaintiffs to seek the return of their items. Although Plaintiffs were provided an opportunity to address this claim, Doc. No. 35, they filed no statement.

*Boundary Cnty. Sheriff's Dept.*, 2011 WL 1655566, at *12 (D. Idaho Apr. 29, 2011) ("The government has an interest in enforcing the law."). Under the circumstances presented here -- no factual dispute that parcel at issue is State land, advance notice for Plaintiffs to remove their items, and the existence of statutory provisions enabling Plaintiffs to reclaim any seized property -- requiring any additional process would not only be impractical and of little value, but would also impose additional administrative and financial burdens on Defendants.

Given these *Mathews* factors in light of the undisputed facts, the court finds no genuine issue of material fact that Plaintiffs received due process in connection with the seizure of their personal items. Accordingly, the court GRANTS Defendants' Motion as to Plaintiffs' due process claim.

**C.     State Law Claims**

A federal court has subject matter jurisdiction under diversity of citizenship (28 U.S.C. § 1332) or through "federal question jurisdiction" (28 U.S.C. § 1331). *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005). If it has federal jurisdiction, the court may exercise supplemental jurisdiction over state law claims such as a claim for negligence or infliction of emotional distress. But, under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all

claims over which it has original jurisdiction[.]" "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

Judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over Plaintiffs' state law claims. The court therefore declines jurisdiction over Plaintiffs' remaining claims.

## V. **CONCLUSION**

For the reasons discussed above, the court GRANTS Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment as to Plaintiff's § 1983 claims, and declines jurisdiction over Plaintiffs'

///

///

///

remaining state law claims.  The court further directs the Clerk of Court to close the case file.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, January 7, 2015.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Fuller, et al. v. Haw. Dep't of Land & Natural Res. William J. Aila, Jr., Chairperson, et al.*, Civ. No. 14-00097 JMS-BMK, Order (1) Granting Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, Doc. No. 30, on Plaintiffs' Federal Constitutional Claims; and (2) Declining Jurisdiction over Remaining State Law Claims